UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAYTINEE BIRD,<br><br>Plaintiff,<br><br>-v-<br><br>MELISSA AVILÉS-RAMOS and NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>Defendants. | 25 Civ. 9494 (JPC)<br><br>OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

Plaintiff Maytinee Bird, the parent and natural guardian of H.C., brings this action against the New York City Department of Education (the "Department") and Melissa Avilés-Ramos, in her official capacity as Chancellor of the Department,[1] under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Bird challenges the decision of a State Review Officer ("SRO") dismissing as untimely her appeal from a decision of an Impartial Hearing Officer ("IHO") regarding H.C.'s unilateral placement at the International Academy for the Brain ("iBrain") for the 2024-2025 school year.

Now before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court denies Bird's motion and grants summary judgment to Defendants.

[1] Since the commencement of this litigation, Avilés-Ramos has been replaced as Chancellor of the New York City Department of Education by Kamar Samuels. *See* NYC Public Schools, Chancellor Kamar H. Samuels, https://www.schools.nyc.gov/about-us/leadership/nycps-leadership-and-offices/chancellor (last visited August 20, 2026). In accordance with Federal Rule of Civil Procedure 25(d), the Clerk of the Court is respectfully directed to substitute Kamar Samuels, in his official capacity as Chancellor of the New York City Department of Education, for Melissa Avilés-Ramos in the caption of this case.

## I. Background

### A. Facts

H.C. is a student with a traumatic brain injury whose disability-related needs include specialized instruction, special transportation, and nursing support. Dkt. 19[2] ("Admin. Rec.") at 10, 31-35. On April 11, 2024, a Committee on Special Education convened and recommended a twelve-month educational program for H.C. consisting of, *inter alia*, school nurse services, an individual health paraprofessional, and special transportation. *Id.* at 10. Instead of accepting that Individualized Education Program, Bird enrolled H.C. at iBrain for the 2024-2025 extended school year, and executed a special transportation agreement with Sisters Travel and Transportation Services, LLC, and a nursing services agreement with B&H Healthcare Services, Inc., in connection with H.C.'s attendance at iBrain. *Id.* at 11.

On July 2, 2024, Bird, through her attorneys at the Liberty & Freedom Legal Group ("LFLG"), filed a due process complaint alleging that the Department had denied H.C. a free appropriate public education ("FAPE") for the 2024-2025 school year and seeking, among other relief, reimbursement of H.C.'s tuition at iBrain and the costs of special transportation and one-to-one nursing services. *Id.* at 11, 97. On July 9, 2024, the New York City Office of Administrative Trials and Hearings ("OATH") sent an email announcing the assignment of Richard Liese as the IHO and identifying Peter Albert, Esq., an attorney at LFLG, as Bird's "Attorney/Advocate Contact" and Peter@pabilaw.org and hearings@pabilaw.org as the email addresses for Albert. *Id.* at 932-934. The next day, LFLG submitted a letter notifying OATH that Albert would be representing Bird along with three other LFLG attorneys, Lisa Eastwood, Erik Seidel, and Richa

[2] Docket Number 19 is the 1,531-page certified record of the underlying administrative proceedings, which has been filed under seal. *See* Dkt. 28 (granting Plaintiff's sealing request).

Raghute; provided email addresses for those three attorneys; and requested that "any future correspondence about this case" be emailed to the two addresses listed in OATH's email from the day before. *Id.* at 91. Throughout subsequent proceedings before the IHO, Eastwood and Seidel represented Bird before the IHO and corresponded with the IHO. *See, e.g.*, *id.* at 930-932 (July 18, 2024 email to IHO), 1300 (hearing on September 18, 2024), 1386 (hearing on October 11, 2024), 1443-1444 (hearing on October 17, 2024); Dkt. 22 ("Defts. 56.1 Stmt.")[3] ¶ 5; *see also* Admin. Rec. at 14 (SRO decision). Albert never appeared at any of the merits hearings before the IHO. *See* Admin. Rec. at 1300 (hearing on September 18, 2024), 1386 (hearing on October 11, 2024), 1443-1444 (hearing on October 17, 2024); Defts. 56.1 Stmt. ¶ 6; *see also* Admin. Rec. at 14 (SRO decision).

On February 25, 2025, the IHO issued a decision concluding that the Department had denied H.C. a FAPE for the 2024-2025 school year, that iBrain was an appropriate unilateral placement for H.C., and that equitable considerations favored reimbursing Bird. *Id.* at 11-12, 36, 41, 45. But although the IHO ordered the Department to reimburse the full cost of H.C.'s tuition at iBrain, he limited transportation and nursing reimbursement to the costs of services "actually provided to and used by" H.C. *Id.* at 12, 47-48, 51-52. On the same day IHO Liese issued his

---

[3] On May 27, 2026, Defendants filed a twelve-paragraph statement of material facts pursuant to Local Civil Rule 56.1 in support of their motion for summary judgment. Dkt. 22. All paragraphs of Defendants' Rule 56.1 statement contain citations to the certified administrative record. Plaintiff, however, did not file a statement responding to Defendants' Rule 56.1 statement. The Court therefore deems admitted the facts set forth in Defendants' Rule 56.1 statement to the extent that those facts find support in the record. *See* Loc. Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *see also* *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

decision, he transmitted the ruling by email to Eastwood, Seidel, and counsel for the Department. *Id.* at 14, 93. One minute later, the IHO forwarded the transmittal email to OATH's administrative office, writing: "My apologies. I forgot to add you to this FOFD transmittal email." *Id.* at 93.

Under New York regulations, a party who wishes for an SRO to review an IHO's decision must "personally serve a notice of request for review and a request for review upon the opposing party . . . within 40 days after the date of the decision of the impartial hearing officer sought to be reviewed." 8 N.Y.C.R.R. § 279.4(a). Because the fortieth day after February 25, 2025 was Sunday, April 6, 2025, Bird's deadline to serve a request for SRO review of the IHO's decision was Monday, April 7, 2025. Admin. Rec. at 13 n.6; *see* 8 N.Y.C.R.R. § 279.11(b) ("If the last day for service of any paper permitted under this Part falls on a Saturday or Sunday, service may be made on the following Monday."). However, Bird served her request for SRO review on the Department by email on May 29, 2025—fifty-two days after the April 7, 2025 deadline. Admin. Rec. at 13; *see* Dkt. 1 ("Complaint") ¶ 84 (admitting that "Plaintiff's Request for Review was filed approximately 52 days after the deadline").[4]

Before the SRO, Bird acknowledged that her request for review was untimely, but asserted that her delay was because the IHO's decision had been "sent to a former employee's email." Admin. Rec. at 66-67. Bird did not identify the purportedly former employee, indicate when that person's employment with LFLG ended, or state when Bird or current LFLG employees had

[4] New York regulations also require a party seeking review of an IHO decision to serve a notice of intention to seek review "no later than 25 days after the date of the decision of the impartial hearing officer sought to be reviewed." 8 N.Y.C.R.R. § 279.2(b). But Bird did not serve a notice of intention to seek review until May 15, 2025, well past that deadline. *See* Admin. Rec. at 83. Additionally, Bird was required to file her request for review of the IHO decision with the Office of State Review within two days of completion of service of that request, 8 N.Y.C.R.R. § 279.4(e), and she failed to meet that deadline as well. Admin. Rec. at 13 n.7.

actually received the IHO's decision. *Id.* at 13 n.8, 14.

On July 30, 2025, the SRO dismissed Bird's appeal as untimely. *Id.* at 9-15. The SRO reasoned that the forty-day deadline to seek review of an IHO decision runs from the date of the decision, as opposed to the date a party actually received that decision. *Id.* at 14 (citing *Mount Vernon City Sch. Dist. v. R.N.*, No. 66291/2018, 2019 WL 169380 (Sup. Ct. Westchester Cnty. Jan. 9, 2019)). The SRO also explained that "it was not unreasonable for the IHO to send the final decision to the two attorneys from the parent's law firm who were both listed on the notice of appearance and who appeared at the impartial hearing." *Id.* at 14. The SRO added that LFLG's failure to advise the IHO or OATH that an attorney was no longer employed at the firm was "an oversight that is solely attributable to the attorney, supervising attorney, and/or the law office's practices," and therefore "does not constitute 'an event that the filing party had no control over.'" *Id.* at 14-15. In any event, the SRO concluded that Bird's theory of why she was not notified of the IHO's decision was factually unsupported, since she did not "state which attorney was no longer with the law firm" and "ignore[d] the fact that the IHO sent the decision to two attorneys from the firm." *Id.* at 15. The SRO thus concluded that no good cause existed for Bird's failure to seek review by the deadline to do so. *Id.*

**B. Procedural History**

On November 13, 2025, Bird initiated this action by filing a Complaint against Avilés-Ramos, in her official capacity as Chancellor, and the Department, challenging the SRO's dismissal. Dkt. 1. At a conference on February 12, 2026, the Court ordered the parties to file motions for summary judgment on the issue of whether the SRO erred in dismissing Bird's appeal as untimely. *See* Feb. 12, 2026 Minute Entry. Bird moved for summary judgment on April 27, 2026, Dkt. 17; Dkt. 17-1 ("Pl. Br."), Defendants opposed Bird's motion and cross-moved for

summary judgment on May 27, 2026, Dkts. 20-23, Bird opposed Defendants' cross-motion and submitted a reply in support of her motion on June 29, 2026, Dkt. 24 ("Pl. Opp."), and Defendants submitted a reply in support of their motion on July 27, 2026, Dkt. 25.

On July 28, 2026, the Court ordered Bird to submit a sworn affidavit addressing whether and when Eastwood's and Seidel's employment at LFLG ended and to provide proof, if any exists, that the IHO's decision was not physically mailed to Bird or that she did not choose to receive the IHO's decision electronically instead of by mail. Dkt. 26. On August 3, 2026, Bird responded with a declaration from her counsel, who attested that Seidel's and Eastwood's employment with LFLG ended on February 2, 2025 and May 14, 2025, respectively. Dkt. 27 ("Spinner Decl.") ¶¶ 2-3. Bird also submitted a declaration from herself attesting that she has been informed the same regarding Seidel's and Eastwood's employment, Dkt. 27-1, as well as employment records for those attorneys reflecting the dates they were hired and their employment ended, Dkt. 27-2 ("Employment Records"). But Bird did not provide any evidence—whether in her declaration or otherwise—that she did not receive the IHO's decision by physical mail or elect to receive that decision electronically.

**II. Legal Standard**

"IDEA actions generally are resolved on summary judgment." *J.W. v. N.Y.C. Dep't of Educ.*, 95 F. Supp. 3d 592, 600 (S.D.N.Y. 2015) (internal quotation marks omitted). But unlike a typical summary judgment motion, a summary judgment motion in an IDEA action "is in substance an appeal from an administrative determination." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012) (internal quotation marks omitted).

Particularly relevant here, the IDEA requires parties "to exhaust all administrative remedies" before bringing a civil action alleging violations of the statute, so long as exhaustion

would not be "futile." *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 204-05 (2d Cir. 2007); *see also J.M. v. N.Y.C. Dep't of Educ.*, 161 F.4th 149, 153 (2d Cir. 2025) (explaining that the exhaustion requirement "is not jurisdictional but is instead a claim-processing rule"). And in New York, the IDEA's administrative process has two tiers: a party first must present a due process complaint before an IHO, *see* N.Y. Educ. L. § 4404(1), and then that party may appeal the IHO's decision to an SRO, *see id.* § 4404(2). Only then may a party seek judicial review. *See* 20 U.S.C. § 1415(i)(2)(A).

"Courts in this Circuit have consistently held that 'absent good cause shown,' 'a party who fails to make a timely appeal to the SRO, or fails to timely serve the respondent, has failed to satisfy the exhaustion requirement.'" *M.G. v. Rye City Sch. Dist.*, No. 25-480, 2026 WL 520677, at *2 (2d Cir. Feb. 25, 2026) (summary order) (quoting *Khanimova v. Banks*, No. 23 Civ. 4124 (JPO), 2024 WL 2093470, at *3 (S.D.N.Y. May 9, 2024)); *see B.C. ex rel. B.M. v. Pine Plains Cent. Sch. Dist.*, 971 F. Supp. 2d 356, 365 (S.D.N.Y. 2013) (collecting cases). But the Second Circuit has "not addressed what standard of review applies to an SRO's dispositive procedural determinations," including an SRO's rejection of a request for review as untimely. *M.G.*, 2026 WL 520677, at *2.

In theory, any of three standards of review might be appropriate. First, "[d]istrict courts in [this] Circuit have generally applied an arbitrary and capricious standard in considering such a determination." *Id.*; *see, e.g.*, *Khanimova*, 2024 WL 2093470, at *3-4; *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 18 Civ. 6964 (NSR), 2019 WL 4600870, at *10-11 (S.D.N.Y. Sept. 21, 2019); *B.C.*, 971 F. Supp. 2d at 365; *Kelly ex rel. M.K. v. Saratoga Springs City Sch. Dist.*, No. 1:09 Civ. 276 (GLS) (RFT), 2009 WL 3163146, at *4 (N.D.N.Y. Sept. 25, 2009). Second, review of an SRO's rejection of an appeal as untimely might also be analyzed under a "more rigorous 'independent

judicial review'" that nonetheless gives "'due weight' to the SRO's 'specialized knowledge and experience.'" *M.G.*, 2026 WL 520677, at *2 (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)). Finally, such a decision might be treated as "an interpretation of the IDEA itself, as opposed to an interpretation of New York procedural requirements," and thus "constitute[] a legal determination that we review de novo." *Id.*; *see S.N. ex rel. J.N. v. Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 603 (2d Cir. 2006).

In *M.G.*, the Second Circuit declined to choose among these standards. 2026 WL 520677, at *2-3. This Court also need not decide the issue because, regardless of the standard of review, Bird has not established good cause to excuse the untimeliness of her administrative appeal.

**III. Discussion**

New York law provides that "[a] State Review Officer may dismiss sua sponte a late request for review or, in his or her sole discretion, may excuse a failure to timely serve or file a request for review within the time specified for good cause shown." 8 N.Y.C.R.R. § 279.13. "Courts in this Circuit narrowly define 'good cause' in the context of untimely SRO appeals to require an event over which 'the filing party had no control.'" *M.K. v. N.Y.C. Dep't of Educ.*, No. 24 Civ. 4900 (LTS), 2026 WL 866416, at *4 (S.D.N.Y. Mar. 30, 2026) (quoting *Polanco v. Porter*, No. 21 Civ. 10927 (MKV), 2023 WL 2751340, at *5 (S.D.N.Y. Mar. 31, 2023)). "Conversely, delays resulting from errors within counsel's control, including clerical mistakes or technical difficulties, generally do not satisfy the good cause standard." *Id.*

Here, it is undisputed that Bird submitted and served her request for review fifty-two days late. Admin. Rec. at 13; Defts. 56.1 Stmt. ¶ 2; *see* Complaint ¶ 84 (admitting that "Plaintiff's Request for Review was filed approximately 52 days after the deadline"). Before the SRO, Bird's only explanation for failing to meet her deadline was that the IHO transmitted his decision "to a

former employee's email," such that Bird did not receive the decision when it was issued. Admin. Rec. at 13, 66-67 ¶ 34. The SRO found that explanation vague, unsupported, and insufficient, *id.* at 13 n.8, 15, and the record before this Court confirms that assessment.

On February 25, 2025, IHO Liese emailed his decision to both Eastwood and Seidel. *Id.* at 93. As mentioned, both Eastwood and Seidel represented Bird throughout the administrative proceedings, appearing at multiple merits hearings before the IHO and corresponding with the IHO. *See, e.g.*, *id.* at 930-932 (July 18, 2024 email to IHO), 1300 (hearing on September 18, 2024), 1386 (hearing on October 11, 2024), 1443-1444 (hearing on October 17, 2024); Defts. 56.1 Stmt. ¶ 5. Following the IHO's February 25, 2025 decision, Eastwood remained employed by LFLG until May 14, 2025—over a month after Bird's April 7, 2025 deadline to serve her request for review—so there is no reason Eastwood could not have notified Bird of the IHO's decision. Spinner Decl. ¶ 2; Employment Records. Moreover, although Seidel's employment at LFLG concluded on February 2, 2025, Spinner Decl. ¶ 3; Employment Records, which was roughly three weeks before the IHO's decision, there is no evidence in the record that LFLG ever advised the IHO, OATH, or the Department of his departure. *See generally* Admin. Rec. As the SRO explained, a law firm's failure to alert the tribunal that an attorney of record has left the firm "is an oversight that is solely attributable to the attorney, supervising attorney, and/or the law office's practices," and is therefore not "an event that the filing party had no control over." Admin. Rec. at 14-15; *accord M.K.*, 2026 WL 866416, at *4.

By comparison, courts in this Circuit have repeatedly sustained SRO dismissals of appeals when a request for review was untimely by a matter of days or even hours. *See, e.g.*, *Khanimova*, 2024 WL 2093470, at *3-4 (three days); *Avaras*, 2019 WL 4600870, at *11 (nine hours, notwithstanding the proffered reason of a process server's error); *N.Y.C. Dep't of Educ. v. S.H.*,

No. 13 Civ. 3499 (AJN), 2014 WL 572583, at *5-7 (S.D.N.Y. Jan. 22, 2014) (one day); *Kelly*, 2009 WL 3163146, at *4-5 (three days). When placed in this context, Bird's fifty-two-day delay becomes even harder to justify.

Bird nonetheless argues that the SRO erred in dismissing her appeal for four reasons. First, Bird argues that IHO Liese did not properly disseminate his decision. In particular, Bird argues that 8 N.Y.C.R.R. § 200.5(j)(5) requires an IHO to "mail a copy of the written, or at the option of the parents, electronic findings of fact and the decision to the parents," which Bird maintains did not happen here. Pl. Br. at 7-9. Additionally, Bird contends that the IHO disregarded LFLG's request that "any future correspondence" be emailed to Albert and copied to LFLG's general firm address, Admin. Rec. at 91. Pl. Br. at 9-11.

As an initial matter, Bird is not correct that 8 N.Y.C.R.R. § 200.5(j)(5) required the IHO to mail a copy of his decision to her. By that regulation's own terms, such requirement applies only "if *a school district* files the due process complaint," 8 N.Y.C.R.R. § 200.5(j)(5) (emphasis added), and here, Bird herself filed the due process complaint that was decided by the IHO. Moreover, Bird has failed to provide any evidence that she did not consent to receive electronic service or was not mailed a copy of the IHO's decision—even after the Court ordered her to provide such proof, if any existed. *See* Dkt. 26. In fact, while Bird submitted a declaration in response to that order, she made no mention in it of whether she received the IHO's decision or whether she consented to electronic service. And regardless of whether the IHO properly transmitted his decision, that would not absolve Bird of her obligation to file a timely request for review. Finally, as to LFLG's request that future correspondence be directed to Albert or a firmwide email, the Court agrees with the SRO that "it was not unreasonable for the IHO to send the final decision to the two attorneys from the parent's law firm who were both listed on the notice of appearance and

who appeared" in proceedings before the IHO. Admin. Rec. at 14. Indeed, Albert did not even appear on behalf of Bird at any merits hearings before the IHO. *See* Admin. Rec. at 1300 (hearing on September 18, 2024), 1386 (hearing on October 11, 2024), 1443-1444 (hearing on October 17, 2024); Defts. 56.1 Stmt. ¶ 6; *see also* Admin. Rec. at 14 (SRO decision). The supposed failure to mail the IHO decision to Bird therefore cannot excuse her fifty-two-day delay.

Second, Bird argues that the SRO incorrectly assumed that law-office error can never provide good cause for an untimely request for review. *See* Pl. Opp. at 1-3. At the outset, this argument mischaracterizes the SRO's decision, which did not announce any sort of categorical rule. But the SRO also was not wrong to hold Bird responsible for the neglect of her attorneys at LFLG. When a person "voluntarily [chooses an] attorney as his representative . . . he cannot [] avoid the consequences of the acts or omissions of [his] freely selected agent." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); *accord U.S. ex rel. Reid v. Richmond*, 295 F.2d 83, 90 (2d Cir. 1961); *Smith v. Ayer*, 101 U.S. 320, 326 (1879) ("The law . . . considers the principal as affected with notice of all facts, notice of which can be charged upon the attorney."); *see also Link*, 370 U.S. at 634 n.10 ("[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."). There is no question that Eastwood was still at LFLG when IHO Liese emailed his decision to her, and that Eastwood then remained at the firm for over a month after Bird's deadline to serve her request for SRO review. *See* Spinner Decl. ¶ 2; Employment Records.

Third, Bird argues that dismissal was inequitable and disproportionate because her underlying appeal was narrow and meritorious, and the Department suffered no prejudice from the delay. Pl. Br. at 16-19; Pl. Opp. at 3-4. Regardless of whether these assertions are true, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were

not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 368 (2d Cir. 2003); *see also Vasquez v. Avilés-Ramos*, No. 24 Civ. 9029 (LJL), 2026 WL 203270, at *6 (S.D.N.Y. Jan. 26, 2026) ("[T]he regulations do not contain an exception to the service rules for lack of prejudice."). Timely filings are especially important in IDEA cases such as this. The purpose of New York's two-tiered system of review is to "channel disputes related to the education of disabled children into an administrative process that . . . promptly resolve[s] grievances." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002), *abrogated on other grounds by Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147-48 (2023). "When a party fails to obtain timely administrative review of its IDEA-based dispute and the SRO does not review and decide the merits of the party's argument, the state educational agency has been denied the opportunity to bring its expertise to bear on a problem as well as to correct its own mistakes." *M.G.*, 2026 WL 520677, at *2 (internal quotation marks omitted).

Fourth, Bird contends that delays and defects in the proceedings prior to the filing of her request for review—a deficient resolution meeting, an inadequately reasoned extension order, and the eight months that elapsed between her due process complaint and the IHO's decision—independently establish good cause for her untimely appeal. Pl. Br. at 19-23. This argument is easily rejected. Any issues which existed prior to the IHO's decision do not explain—let alone excuse—Bird's failure to appeal from that decision within forty days.

Finally, as a last-ditch effort, Bird argues that exhaustion should be excused entirely because the administrative process "was invoked and then made unavailable by the SRO's procedural dismissal." Pl. Br. at 23. But this is not a case where Bird was not afforded an adequate

chance to appeal the IHO's decision—the issue is that she simply did not take advantage of that opportunity within the time allotted.

**IV. Conclusion**

For the foregoing reasons, Bird's motion for summary judgment is denied, and Defendants' cross-motion for summary judgment is granted. Bird's counsel is directed to provide a copy of this Opinion and Order to Bird herself, and file a letter on the docket confirming that occurred. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: August 20, 2026
New York, New York

JOHN P. CRONAN
United States District Judge